UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVID NIEMIEC,

                Petitioner,                Case Number: 2:13-CV-10180
                                        HON. GEORGE CARAM STEEH

v.

SHERRY BURT,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner John David Niemiec seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for three counts of first-degree criminal sexual conduct, and two counts of second-degree criminal sexual conduct. He raises twenty claims for habeas relief. Respondent argues that the claims are non-cognizable, procedurally defaulted and/or meritless. The Court denies the petition.

## I.    Facts

Petitioner's convictions arise from the sexual assaults of Petitioner's girlfriend's two daughters, A.W. and S.B. The assaults occurred in 1998 and 1999, but were not reported until 2005.

A.W. testified that, in 1998, she lived in Petitioner's home in the city of Warren with her mother, Roberta Lawes, her sister, S.B., and her brother Jacob. At the time, Petitioner was her mother's boyfriend. A.W. testified that she did not have a good relationship with Petitioner, he sometimes pushed her and often verbally abused her.

-1-

One day in 1998, Petitioner began hollering at Jacob.  A.W., who was then thirteen-years old, tried to place herself between Jacob and Petitioner.  Petitioner, nevertheless, picked Jacob up and threw him in his room.  He then shoved A.W. against a wall and said, "You want to act like a big woman?  I'll show you what it's like to be a woman." ECF No. 23-12, Pg. ID 1222.  Petitioner then grabbed A.W.'s breast and between her legs.  He kept touching her through her clothes until he finally let her go and walked away.  Shortly after this encounter, A.W. moved in with her aunt and uncle.  She never saw Petitioner again.  A.W. testified that she did not report the incident at the time because she did not believe anyone would do anything.

S.B. testified that in 1999, when she was seven-years old, she was playing with dolls in a large inoperable van that sat in the yard of Petitioner's home when Petitioner entered the van.  Initially, she thought Petitioner was going to play with her.  He then started rubbing her thigh and kissing her.  He told her that they were going to play a game.  He touched her chest and then reached his hand inside her underwear.  He placed his fingers inside her vagina.  She asked Petitioner to stop, but he did not. Approximately two weeks later, S.B. woke up in the middle of the night because she was having nightmares.  She went into her mother's bed to sleep.  She woke up in her mother's bed in the morning after her mother had left for work.  Shortly after she awoke, Petitioner got into bed with her.  He placed his fingers inside her vagina and also licked her private area.  He told S.B. it would be over soon.  When Petitioner finished tucking her in, he told S.B. that if she told anyone he would kill her, her mother, and her family. S.B. believed Petitioner's threats, so she did not tell anyone about the assaults.  In 2005, S.B. was having many nightmares about the incidents.  She eventually told her

father and step-mother what had happened and they contacted police.

Petitioner testified in his own defense. He denied assaulting S.B. and A.W.

## II.   Procedural History

Petitioner was convicted following a jury trial in Macomb County Circuit Court of three counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. On March 9, 2007, he was sentenced to 10 to 40 years' imprisonment for each first-degree criminal sexual conduct conviction and 3 to 15 years' imprisonment for each second-degree criminal sexual conduct conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims: (i) verdict was against the great weight of the evidence; (ii) Mich. Comp. Laws § 768.27 violates the separation of powers, (iii) Mich. Comp. Laws § 768.27 violates the Ex Post Facto Clause; (iv) trial court improperly relied on Mich. Comp. Laws § 768.27 to govern the admission of evidence; (v) trial court improperly granted prosecution's motion to join two unrelated allegations of sexual assault; and (vi) trial court erred in denying motion for new trial. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Niemiec*, Nos. 277212, 277237, 2008 WL 5382927 (Mich. Ct. App. Dec. 23, 2008). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Niemiec*, 483 Mich. 1071 (Mich. June 10, 2009).

Petitioner then filed a motion for relief from judgment in the trial court. He raised fifteen claims for relief, many of which included numerous sub-claims. The trial court denied the motion. *See* 4/12/2010 Order, *People v. Niemiec,* Nos. 2006-3114-FH &

-3-

2006-3117-FC (Macomb County Cir. Ct.), ECF No. 24-5, Pg. ID 1849-63.  Petitioner

filed an application for leave to appeal in the Michigan Court of Appeals.  The Michigan

Court of Appeals denied leave to appeal.  *People v. Niemiec*, Nos. 298514 & 298689

(Mich. Ct. App. Dec 29, 2010). ECF No. 26-1, Pg. ID 2175.  The Michigan Supreme

Court also denied leave to appeal, *People v. Niemiec*, Nos. 142431 & 142432, 493

Mich. 890 (Mich. Nov. 20, 2012), and denied Petitioner's motion for reconsideration.

*People v. Niemiec*, Nos. 142431 & 142432, 493 Mich. 971 (Mich. Apr. 29, 2013).

Petitioner has filed four additional motions for relief from judgment.  All have been

denied.

In 2013, Petitioner filed the pending habeas petition.  He raises twenty claims for

relief, many with multiple sub-claims.  Respondent synthesized and reorganized

Petitioner's claims into ten claims and sub-claims.  The Court finds Respondent's

statement of the claims accurately and more clearly sets forth the substance of the

claims raised in the petition and addresses the claims as reorganized by Respondent:

I.      Mich. Comp. Law 768.27 violates separation of powers between
        state legislature and the judiciary.

II.     Mich. Comp. Law 768.27 as applied in this case is an *ex post facto* law
        because it was passed in 2006 while the conduct in this case was in 1999.

III.    [Niemiec's Issues III, XVII, and XVIII.] State evidentiary claims:

        a.      The trial court improperly relied on Mich. Comp. Law 768.27 for
                admission of evidence when F.R.E. 403 and 404(b) govern matters
                of procedure.

        b.      The state court erred when it failed to address the issue of whether
                the combined testimony of both complainants was more prejudicial
                than probative.

        c.      The state court erred when it allowed in hearsay testimony.  The

cumulative effect of errors requires reversal.

IV.    The trial court erred when it granted the prosecution's motion to join two unrelated and dissimilar allegations of sexual assault.

V.    [V(a), XVI.] The trial court abused its discretion when it denied Niemiec's motion for a new trial.

VI.    [VII, IX, XV(a).] Jury Instructions claims.

    a.    The trial court curative instruction to defense regarding "credibility of witnesses" allowed the prosecution to question defense witnesses regarding their credibility.

    b.    The trial court improperly gave a jury instruction regarding Niemiec's out of court statements allowing uncorroborated hearsay to be admitted.

    c.    The trial court failed to give a curative instruction to the jury after the lead detective vouched for the complainant.

VII.    [XIV(a)-(e), XIII(d), XV(c).] The prosecutor committed misconduct by:

    a.    During closing arguments mentioning a nonconvicted felony.

    b.    Improperly vouching for the credibility of the complainant.

    c.    Improperly referring to Niemiec as a liar during closing.

    d.    Improperly defining the law in opening and closing arguments.

    e.    Improperly defining "reasonable doubt" to the jury.

    f.    The prosecutor failed to correct perjured testimony by victim and her mother.

    g.    The prosecutor improperly failed to disclose the lead detective's perjury.

VIII. [XIX.]    There was insufficient evidence to support bind over of 2 of 5 charges at the preliminary examination.

IX. [XX.]    There was insufficient evidence to support the convictions.

X.    [V(b)-(f), VI, VIII, X(a)-(c), XI(a)-(c), XII(a)-(c), XIII(a)-(c),(e), XV(b).]

-5-

Niemiec's trial counsel was ineffective for twenty-one reasons:

a.      Trial counsel was ineffective for failing to object to prosecution's questioning of Niemiec and his girlfriend.

b.      Counsel failed to impeach the complainant.

c.      Counsel failed to object to hearsay testimony of the lead investigator in the case.

d.      Counsel failed to object to the lack of foundation regarding witness testimony (for origin of bruises).

e.      Counsel failed to object to Niemiec's drinking, prior arrests, and convictions being admitted at trial.

f.      Defense counsel was ineffective when counsel failed to acknowledge Niemiec's right to exercise a peremptory challenge, and the trial court's failure to acknowledge Niemiec had not been given the opportunity to exercise a peremptory challenge violated his constitutional right to be tried by a fair and impartial jury.

g.      Trial counsel's failure to recognize and present the defense of "statute of limitations" amounts to ineffective trial counsel.

h.      Failure to introduce corroborating exculpatory evidence to the jury.

i.      Failure to properly investigate Niemiec's criminal background prior to trial.

j.      Failure to object to prosecutor's misconduct.

k.      Failure to utilize a private investigator to find Theresa Hicks to testify.

l.      Failing to ask the prosecutor for assistance in locating a key witness.

m.      Failing to produce a psychological expert approved by the court.

n.      Failing to call defense witnesses (who were not victims of abuse).

o.      Failing to interview a witness.

p.      Failing to call lead detectives for impeachment regarding original

-6-

complaint.

q.    Failing to move for a mistrial for a violation of the sequestration order.

r.    Prosecution witnesses had improper contact with a juror and counsel did not bring this to the court's attention.

s.    Failure to impeach prosecution witnesses A.W. and J.W.

t.    Failure to object to the cross examination of defense witness Pepe about whether his van could be used for a sexual assault.

u.    Counsel was ineffective during a polygraph examination and subsequent questioning of Niemiec.

## III.    Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

-7-

*Id.* at 408. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's

-8-

decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Discussion

### A.   Separation of Powers Claim

First, Petitioner argues that Mich. Comp. Laws § 768.27a is unconstitutional because it violates the Separation of Powers Clauses of the Michigan and United States Constrictions. The trial court relied on § 768.27a when it allowed each victim to testify in both cases. In a criminal sexual conduct case involving a minor victim, § 769.27a allows the admission of evidence that a defendant committed another listed offense against a different minor and states that the evidence may be considered for the purpose of showing a defendant's propensity to commit similar acts. Petitioner argues that this statute conflicts with Mich. Rule of Evidence 404(b),which bars other-act

evidence from being used to show propensity, and, that the conflict violates the separation of powers.

"[T]he concept of separation of powers embodied in the United States Constitution is not mandatory in state governments."  *Sweezy v. New Hampshire*, 354 U.S. 234, 255 (1957).  Therefore, this claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), *quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus review does not lie for errors of state law").

Petitioner's claim that application of the amended statute violated the Michigan Constitution is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67-68.

### B.   *Ex Post Facto* Clause Claim

Petitioner argues that application of Mich. Comp. Laws § 768.27a to his case violated the *Ex Post Facto* Clause.  The Michigan Court of Appeals rejected this claim because the statute did not "change 'the standard for obtaining a conviction'" and sufficient evidence supported Petitioner's convictions absent this evidence.  *Niemiec*, 2008 WL 5382927 at *3.

In *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798), Justice Chase identified the following four categories of laws implicated by the *Ex Post Facto* Clause:

> 1st.  Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed.  3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed.  4th.  Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*.

*Calder*, 3 Dall. at 390 (emphasis in original), quoted with approval in *Carmell v. Texas*,

-10-

529 U.S. 513, 522 (2000). Petitioner argues that application of the amended statute to

his case implicates the fourth category of *ex post facto* protection.

The Supreme Court has held that "[s]tatutes which simply enlarge the class of

persons who may be competent to testify in criminal cases" do not offend the *ex post*

*facto* prohibition. *Hopt v. Territory of Utah*, 110 U.S. 574, 589 (1884); cited with

approval *Carmell v. Texas*, 529 U.S. 513, 543 (2000). The Court reasoned that such

statutes do not offend the *ex post facto* prohibition because:

> [T]hey do not attach criminality to any act previously done, and which was
> innocent when done; nor aggravate any crime theretofore committed; nor
> provide a greater punishment therefor than was prescribed at the time of
> its commission; nor do they alter the degree, or lessen the amount or
> measure, of the proof which was made necessary to conviction when the
> crime was committed.
>
> . . . Any statutory alteration of the legal rules of evidence which would
> authorize conviction upon less proof, in amount or degree, than was
> required when the offence was committed, might, in respect of that
> offence, be obnoxious to the constitutional inhibition upon *ex post facto*
> laws. But alterations which do not increase the punishment, nor change
> the ingredients of the offence or the ultimate facts necessary to establish
> guilt, but – leaving untouched the nature of the crime and the amount or
> degree of proof essential to conviction – only remove existing restrictions
> upon the competency of certain classes of persons as witnesses, relate to
> modes of procedure only, in which no one can be said to have a vested
> right, and which the State upon grounds of public policy, may regulate at
> pleasure. Such regulations of the mode in which the facts constituting
> guilty may be placed before the jury, can be made applicable to
> prosecutions or trials thereafter had, without reference to the date of the
> commission of the offence charged.

*Hopt*, 110 U.S. at 589-90.

In *Carmell v. Texas*, 529 U.S. 513 (2000), the Supreme Court considered

whether application of an amended Texas statute violated the *Ex Post Facto* Clause

where the amended statute permitted conviction of certain sexual offenses based solely

-11-

upon non-corroborated testimony of minor victims.  Prior to the amendment, the testimony of minors over the age of thirteen could not support a conviction unless the testimony was corroborated or the victim had informed another person within six months of the offense.  In *Carmell*, the petitioner had been convicted of fifteen counts of criminal sexual conduct.  The petitioner contested four of those convictions because the acts were committed prior to the amendment's enactment, when the victim was a minor over the age of thirteen, and were based upon her uncorroborated testimony.  The Court held that the statute could not be applied to crimes committed before its enactment because it was a law that "alter[ed] the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offence, in order to convict the offender."  *Id.* at 530.  Under the law in effect at the time the acts were committed, the petitioner was entitled to a judgment of acquittal because the prosecutor produced only the victim's testimony.  The amended law, thus, "changed the quantum of evidence necessary to sustain a conviction."  *Id.*  "Requiring only the victim's testimony to convict, rather than the victim's testimony plus other corroborating evidence is surely less testimony required to convict."  *Id.*  The amended statute, therefore, rendered what had been legally insufficient evidence to support the conviction, legally sufficient.

In contrast, the amendment to Michigan's law does not change the quantum of evidence necessary to sustain a conviction.  It simply alters the introduction of certain evidence.  As such, its application to Petitioner's case did not violate the *Ex Post Facto* Clause.  *Accord Muscio v. New Jersey*, 2005 WL 2600256 (D. N.J. Oct. 13, 2005) (holding that amendment of marital communication privilege, between petitioner's first

-12-

and second trial, to permit disclosure of marital communication when either spouse consents to disclosure was not an *ex post facto* violation because changes in witness competency statutes do not run afoul of the *Ex Post Facto* Clause).  Habeas relief is denied on this claim.

### C.    Evidentiary Claims

Petitioner raises several claims regarding evidentiary rulings by the trial court. Specifically, he argues that the state court improperly relied on Mich. Comp. Laws § 768.27 rather than Fed. R. Evid. 403 and 404(b), in allowing each girl to testify in both cases; improperly admitted hearsay testimony from Officer Kroll; and failed to consider the combined evidence in the two cases was unfairly prejudicial.

First, Petitioner argues that the trial court should have been guided by Fed. R. Evid. 403 and 404(b), rather than Mich. Comp. Laws 768.27.  Petitioner cites no support for his argument that Federal Rules of Evidence are binding on the state or that they supersede competing state laws, nor is the Court aware of any support for the argument.  This claim is denied.

Second, Petitioner argues that Detective Kroll was improperly permitted to testify as to hearsay statements made by S.B.  The trial court, in denying Petitioner's motion for relief from judgment, held that Detective Kroll's testimony was not hearsay because it was offered to explain Detective Kroll's state of mind and his reasoning in deciding to pursue the case in the manner he did.  *See* 4/12/2010 Opinion and Order, pp. 13-14, *People v. Niemiec,* Nos. 2006-3114 & 2006-3117, ECF No. 24-5, Pg. ID 1861-62. Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition."  *Miskel v. Karnes*, 397

F.3d 446, 453 (6th Cir. 2005) *quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). The Court finds no reason why the state court's finding on this evidentiary issue should be disturbed.

Finally, Petitioner claims that the trial court erred in failing to consider the cumulative effect of the witnesses' testimony in these joint trials. However, as discussed in more detail below, the Michigan Court of Appeals held that each victim's testimony would have been properly admissible in the other victim's case even if separate trials had been held. The Court will not disturb the state court's decision grounded in its interpretation of state law. *See Estelle*, 502 U.S. at 67-68 (holding that, on habeas review, a federal court may not correct a state court's misapplication of its own law).

> ### D.    Joinder of Cases

Next, Petitioner argues that the trial court violated his right to due process by granting the prosecutor's motion to join the two cases. Respondent argues that this claim is waived because Petitioner expressly stipulated to the joinder of the two cases. The Court need not address the issue of procedural default because the claim is plainly without merit. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (procedural default is ordinarily addressed first, but resolution on the merits is permitted where the issue is easily resolved).

Improper joinder does not violate the Constitution unless "it results in prejudice so great as to deny a defendant his ... right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). The issue "is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to

-14-

sever denied the petitioner due process of law under the Fourteenth Amendment."

*Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007). To establish prejudice from joinder, a

defendant must point to specific evidence that the joinder was prejudicial.  *United States*

*v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005). "[A]n unproven assertion is not compelling

evidence of actual prejudice."  *Id.* at 679.

Petitioner was not denied his right to a fair trial by the joinder of these cases.

The trial court held that each victim's testimony was admissible in the other victim's

case.  The Michigan Court of Appeals affirmed the trial court's evidentiary decision.

Petitioner, therefore, was not prejudiced by joinder of the trials as each jury would have

heard both victims' testimony even if the cases had been tried separately.  Habeas relief

is denied on this claim.

### E.    Denial of Motion for New Trial

Next, Petitioner argues that the trial court abused its discretion when it denied

Petitioner's motion for a new trial without considering newly-discovered evidence

regarding his polygraph examination.

A claim that a habeas petitioner is entitled to relief based upon the failure of a

state trial judge to grant him a new trial on the basis of newly discovered evidence, is

not cognizable in a habeas proceeding.  *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.

1986).  *See also Buford v. Perini*, 805 F.2d 1033, 1986 WL 18098, at *3 (6th Cir.1986)

("[T]he denial of petitioner's post-trial motion [for new trial based upon newly discovered

evidence] is simply a matter of state law which cannot serve as a basis for federal

habeas corpus relief.").  Accordingly, this claim is not cognizable on federal habeas

corpus review.

-15-

F.      **Jury Instruction Claims**

Petitioner raises three jury-instruction-related claims.  He argues that the trial court erred in instructing the jury that witnesses cannot comment on the credibility of other witnesses, giving the standard jury instruction about statements made by a defendant, and not giving a curative instruction after Officer Kroll testified that people who are telling lies tend to be unable to maintain their stories consistently under repeated questioning.

"Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not entitle a habeas claimant to relief."  *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012), citing 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Federal habeas relief lies for a jury instruction claim only when the "instruction is so flawed as a matter of state law as to 'infect[] the entire trial' in such a way that the conviction violates due process."  *Id.* quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

In denying Petitioner's motion for relief from judgment, the trial court reviewed the propriety of the instructions and held that, under Michigan law, the jury instructions were accurate and appropriate.  4/12/10 Opinion and Order at 5, 7, 12-13, ECF No. 24-5, Pg. ID 1853, 1855, & 1860-61.  It is outside the province of a federal court, on habeas review, to second-guess a state court's interpretation of state law.  *Davis v. Morgan*, 89 F. App'x 932, 936 (6th Cir. 2003).  Where a state appellate court has assessed the necessity and adequacy of a particular jury instruction under state law, a federal habeas court cannot question that state-law finding.  *Id.*  Therefore, Petitioner's jury-instruction claims fail to state a claim upon which habeas relief may be granted.

-16-

G.     **Prosecutorial Misconduct Claims**

Next, Petitioner raises several claims or prosecutorial misconduct.  Specifically, he argues that the prosecutor engaged in misconduct by: referencing Petitioner's prior bad acts that did not result in criminal charges or convictions in her closing arguments, vouching for the credibility of prosecution witnesses, referring to Petitioner as a liar, improperly defining the law in opening and closing arguments, including improperly characterizing the definition of reasonable doubt, and presenting perjured testimony.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153, (June 11, 2012).  In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, — U.S. at —, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at 103).

First, Petitioner argues that the prosecutor engaged in misconduct by referencing prior acts for which Petitioner was never convicted.  The state court held that the prosecutor's comments were proper because she had used Petitioner's prior non-convicted felonies to impeach his testimony on cross-examination.  Petitioner has not

-17-

shown that the trial court erred in admitting this impeachment evidence, particularly

where Petitioner himself had opened the door to the testimony on direct examination.

Next, Petitioner argues that the prosecutor improperly vouched for the credibility

of prosecution witnesses.  Prosecutors may not vouch for a witness's credibility.

Prosecutorial vouching and an expression of personal opinion regarding the accused's

guilt "pose two dangers: such comments can convey the impression that evidence not

presented to the jury, but known to the prosecutor, supports the charges against the

defendant and can thus jeopardize the defendant's right to be tried solely on the basis

of the evidence presented to the jury; and the prosecutor's opinion carries with it the

imprimatur of the Government and may induce the jury to trust the Government's

judgment rather than its own view of the evidence."  *United States v. Young*, 470 U.S. 1,

18-19 (1985).

The trial court held that the prosecutor's comments in closing argument were not

designed to vouch for the credibility of prosecution witnesses.  The trial court

reasonably disposed of Petitioner's claim.  It was not improper for the prosecutor to ask

the jury to consider various witnesses' motives for testifying truthfully.  The prosecutor

did not imply that she had some special information about any witness's credibility.

Moreover, even if the state court erred, habeas relief would be denied because the

court of appeals' decision was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Harrington*, 562 U.S. at 103.  Habeas relief, therefore, is denied.

Similarly, the prosecutor did not commit misconduct by calling Petitioner a "liar."

"[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the

-18-

defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). In this case, the prosecutor highlighted the inconsistences in Petitioner's testimony and asserted the reasonable inference that Petitioner was lying. This is a proper argument.

Petitioner argues that the prosecutor improperly characterized the meaning of "reasonable doubt" in her closing argument. Specifically, he argues that the prosecutor should not have likened the entire case to a "jigsaw puzzle" and improperly told the jury that even if some of the pieces of the puzzle were missing they could nevertheless convict Petitioner. The trial court held that the analogy was a passing one and did not lower the prosecution's burden of proof. This Court agrees. The analogy did not suggest that the prosecution's burden was anything less than reasonable doubt. Instead, the analogy informed the jury that the prosecution must still carry its burden of proving the elements of each of the crimes beyond a reasonable doubt.

Finally, Petitioner argues that the prosecutor knowingly admitted perjured testimony from the lead detective and the victims. A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194 (1963). In order to establish prosecutorial misconduct or denial of due process, a petitioner must show: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Brooks v. Tenn.*, 626 F.3d 878, 894-95 (6th Cir. 2010). "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.* Here, Petitioner, at most, points to inconsistencies in testimony that do not establish

-19-

the knowing presentation of false testimony.

### H.    Improper Bind-Over Claim

Petitioner next argues that the trial court erred in finding sufficient evidence was presented at the preliminary examination to bind him over for trial.  This claim does not present a cognizable basis for habeas relief. There is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n. 26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). A state court's failure to even hold a preliminary examination does not present a cognizable habeas claim.  *See Scott v. Bock*, 241 F. Supp.2d 780, 793 (E.D. Mich. 2003) (Lawson, J.).  A claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review.  *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.). Further, it is an "established rule that illegal arrest or detention does not void a subsequent conviction."  *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)).  Therefore, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein*, 420 U.S. at 119.  Because Petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his trial.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### I.    Sufficiency of the Evidence

Petitioner argues that insufficient evidence was presented at trial to support his convictions.  "[T]he Due Process Clause protects the accused against conviction except

-20-

upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of first-degree criminal sexual conduct, as charged in this case, are that the defendant engaged in sexual penetration with another person who was under thirteen years of age. Mich. Comp. Laws § 750.520b(1)(a); *People v. Hammons*, 210 Mich. App. 554, 557, 534 N.W.2d 183 (1995). The elements

of second-degree criminal sexual conduct are: (1) the defendant intentionally touched (2) the intimate parts of another person or the clothing covering those parts, (3) the touching was done for a sexual purpose or could reasonably be construed as being for a sexual purpose, (4) the other person was at least thirteen years of age but less than sixteen, and (5) the other person was a member of the defendant's household. *People v. Phillips*, 251 Mich. App. 100, 102 (2002); 750.520c(1)(b)(i).

The trial court denied Petitioner's sufficiency of the evidence claim in denying the motion for relief from judgment. The trial court held that the victims' testimony, if believed, was sufficient to establish each of the elements of the each of the crimes. 4/12/10 Opinion & Order at 14, ECF No. 24-5, Pg. ID 1862. Although Petitioner maintained his innocence, the jury was in the "sole position to determine the credibility of all the witnesses." *Id.*

Petitioner's argument challenging the trial court's decision rests upon attacks on the credibility of both victims. He points to alleged inconsistencies in their testimony. But, on habeas review, a federal court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 326). According the state court's findings of fact a presumption of correctness, the Michigan Court of Appeals' decision

-22-

easily passes scrutiny under the deferential AEDPA standard.  The state court applied the correct constitutional test, relied on facts amply supported in the record, and did not unreasonably apply clearly established constitutional law.  Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

      **J.**    **Ineffective Assistance of Counsel Claims**

Finally, Petitioner raises twenty-one ineffective assistance of trial counsel claims. Five of these claims were raised and denied on direct review.  The remaining sixteen were raised for the first time on collateral review.  All of the claims are meritless.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that,

-23-

but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable."  *Id.* at 687.

"The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so."  *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Ibid.*

1.    Claims raised on direct review

On direct review, Petitioner raised five ineffective assistance of counsel claims. First, he claims that defense counsel was ineffective for failing to object when the prosecutor asked Petitioner and his girlfriend to comment on the credibility of other witnesses.  Specifically, Petitioner objected to the prosecutor's asking Petitioner if the officer-in-charge "made up" one of Petitioner's interview answers that Petitioner denied making at trial.  The Michigan Court of Appeals held that the prosecutor's question was not tantamount to asking Petitioner to comment on the officer's credibility.  *Niemiec*, 2008 WL 5382927 at *3.  Petitioner also takes issue with the prosecutor asking his girlfriend whether Petitioner would be lying if he testified he had never been arrested on cocaine charges.  She testified that he would be.  The Michigan Court of Appeals held that Petitioner's girlfriend's response "did not constitute an opinion of defendant's

-24-

credibility, but is a factual question designed to impeach defendant's testimony." *Id.* The Michigan Court of Appeals concluded that counsel was not ineffective in failing to raise futile objections. This Court agrees. Petitioner has not shown that the state court's finding that both questions were permissible was incorrect or contrary to Supreme Court precedent. The prosecutor's questions were fairly and narrowly targeted at impeaching Petitioner's testimony. The Court, therefore, finds the state court's holding a reasonable application of *Strickland*.

Second, Petitioner argues that counsel was ineffective in failing to impeach S.B. regarding a discrepancy between her testimony and the original police report. The Michigan Court of Appeals held that it was reasonable to conclude that defense counsel did not pursue this discrepancy because it was explained by the officer-in-charge to be a clerical error and defense counsel did not wish to further confirm the testimony. *Niemiec*, 2008 WL 5382927 at *3. The state court's decision is supported by the record and not "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Third, Petitioner argues that his attorney was ineffective in failing to object to the lack of foundation regarding testimony from defense witness Catherine Dissette that she saw bruises on Roberta Lawes. Dissette testified on cross-examination that she concluded Petitioner was abusive toward Lawes based on these bruises. The Michigan Court of Appeals held counsel was not ineffective because "it may be presumed that defense counsel did not want to delve into whether the witness had detailed knowledge of defendant's potentially abusive behavior." *Niemiec*, 2008 WL 5382927 at *3. Under the highly deferential *Strickland* standard, Petitioner is unable to show that counsel's

-25-

failure to object to Dissette's testimony was anything other than reasonable trial strategy.

Fourth, Petitioner argues that counsel was ineffective in failing to object to hearsay testimony from police detective Martin Kroll. The Michigan Court of Appeals held that it found no hearsay testimony in the pages referenced by Petitioner and neither does this Court. Therefore, defense counsel was not ineffective in failing to object.

Finally, Petitioner argues that trial counsel was ineffective in failing to move to suppress evidence of Petitioner's drug use, prior arrests, and violent history. The Michigan Court of Appeals held that this evidence was properly admitted under state law. The state court found evidence of defendant's drug use "relevant to his ability to recall the events of the relevant time period ... [and] to the relationship between defendant and his primary corroborating witness," and evidence of Petitioner's prior violent conduct relevant to the present case. *Niemiec*, 2008 WL 5382927 at *3. Additionally, the court held evidence of Petitioner's prior criminal charges was properly admitted to impeach Petitioner's testimony that he had never been charged with possession or domestic violence. *Id.* Because the evidence was properly admitted under state law, counsel was not ineffective in failing to object to its admission. *Accord United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("'If evidence admitted without objection was admissible, then the complained of action fails both prongs fo the *Strickland* test: failing to object to admissible evidence cannot be a professionally unreasonable action, nor can it prejudice the defendant against whom the evidence was admitted.'") (quoting *Hough v. Anderson*, 272 F.3d 878, 897 (7th Cir. 2001).

-26-

2.     Claims raised on collateral review

Petitioner raised his remaining ineffective assistance of counsel claims on collateral review in state court.  The trial court denied all of these claims in its order denying Petitioner's motion for relief from judgment.  First, the trial court rejected Petitioner's claim that he was denied the right to use all of his peremptory challenges. The trial court noted that defense counsel used eleven of the twelve statutorily allowed peremptory challenges and that, after consulting with Petitioner, defense counsel indicated that he and Petitioner was satisfied with the jury.  4/12/10 Opinion and Order at 4-5, ECF No. 24-5, Pg. ID 1852-53.  The exercise of peremptory challenges is a matter of trial strategy and there is no evidence in the record that counsel lacked strategic reasons for declining to exercise the final peremptory challenge.  In addition, where an ineffective assistance of counsel claim is founded on a claim that counsel failed to reasonably exercise peremptory challenges, a petitioner must show that a juror was actually biased against him.  *See Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001).  Petitioner has not met this burden.

Next, Petitioner argues that his trial attorney was ineffective in failing to argue that the statute of limitations applicable to his crimes expired before he was prosecuted. The statute of limitations applicable to second-degree criminal sexual conduct was amended in 2001 to extend the limitations period from six to ten years or until the victim's twenty-first birthday.  Mich. Comp. Laws 767.24(2).  Petitioner committed the charged crimes in 1998, before the prior six-year statute of limitations expired. Petitioner would have a valid claim only if the extension of the limitations period occurred after the statute of limitations for the offenses had run.  *See People v. Russo*,

439 Mich. 584 (Mich. 1992). Petitioner fails to show that his attorney was ineffective in failing to raise a statute of limitations argument where Michigan law clearly held the prosecution was not time-barred.

Petitioner argues that counsel was ineffective in failing to introduce corroborating exculpatory evidence in the form of phone records. It was Petitioner's theory that A.W. and S.B. fabricated charges against him after he placed prank phone calls to their mother. He claims that admission of the phone records would have corroborated his testimony regarding the number and time of the calls. The trial court held that defense counsel's decision not to introduce the phone records was one of reasonable trial strategy because the phone records showed that several of Petitioner's calls lasted up to eight minutes, which contradicted Petitioner's testimony. Under the *Strickland* standard, counsel's actions are presumptively reasonable. Given the dubious exculpatory nature of the phone records and the possibility that they would call into question Petitioner's credibility rather than bolster it, the conclusion that this claim fails to satisfy the *Strickland* standard is a reasonable one.

Petitioner further argues that counsel was ineffective in failing to investigate Petitioner's criminal background prior to trial. Petitioner has not shown that counsel was unaware of his criminal background. Moreover, the Michigan Court of Appeals held that this evidence was properly admitted. Therefore, Petitioner has not shown what could have been gained by any further pretrial investigation on this subject.

Next, Petitioner argues that counsel was ineffective in failing to object to the prosecutor's misconduct. As discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct. Therefore, counsel was not ineffective for failing to

object on this basis.

Petitioner's next ineffective assistance of counsel claim centers around counsel's allegedly insufficient efforts to find Theresa Hicks, who worked with Petitioner and babysat for S.B.  Petitioner argues that his defense counsel refused to utilize a private investigator to locate Hicks and that the prosecutor refused to assist the defense in procuring her presence.  The trial court held that Petitioner's purported need for Hicks' testimony was a "fishing expedition."  4/12/10 Opinion and Order at 8, ECF No. 24-5, Pg. ID 1856.  Petitioner failed to provide an offer of proof as to what Hicks' testimony would have been.  Similarly, in his habeas petition, Petitioner fails to make an offer of proof showing that Hicks' testimony would have been relevant or beneficial to the defense.  Without more, Petitioner cannot show that counsel was deficient for failing to locate Hicks or that he was prejudiced by her absence.

Petitioner also claims that defense counsel should have retained an expert witness to testify that the victims' behavior was inconsistent with behavior normally exhibited by victims of sexual abuse.  The trial court found no prejudice to the defense:

> Given the wide range of psychological responses to sexual abuse, an expert would not be able to definitively testify that the complainants' behavior was inconsistent with criminal sexual conduct.  Hence, defendant can not possibly establish a "reasonable probability" that the outcome of the trial would have been different had trial counsel procured an expert witness.

4/12/10 Opinion and Order at 9, ECF No. 24-5, Pg. ID 1857.

Petitioner provides no indication that an expert witness who would have testified favorably to the defense was available or what the expert's testimony would have been.  Absent any indication that favorable testimony could have been procured, Petitioner

fails to show that the trial court's decision that counsel was not ineffective is an unreasonable application of *Strickland*.

Petitioner argues that defense counsel was ineffective in failing to call defense witnesses Carol Gerig and Crystal Hayes, daughters of a woman Petitioner dated after he no longer lived with Roberta Lawes. Petitioner argues that these witnesses would have testified that Petitioner lived with their family sporadically over a period of 7 years and he never touched them inappropriately. The trial court rejected this claim, finding that Gerig's and Hayes's testimony was not substantive evidence related to whether Petitioner molested the victims and was inadmissible under Mich. Rule of Evid. 403. 4/12/10 Opinion and Order at 9, ECF No. 24-5, Pg ID 1857. Given that the trial court held that this evidence was inadmissible under Michigan Rules of Evidence, counsel was not ineffective for failing to attempt to present these witnesses.

Petitioner argues counsel was ineffective for failing to call Jolee B., S.B.'s step-mother, as a witness. The state court held that because Jolee's anticipated testimony would relate only to what S.B. told her, it would have been inadmissible. Therefore, the state court found counsel was not ineffective in failing to call Jolee as a witness. ECF No. 24-5, Pg. ID 1857. The state court's holding was a reasonable application of *Strickland*.

Petitioner also argues that counsel was ineffective in failing to interview Russell B., prior to trial. The trial court found no prejudice in counsel's failure to interview Russell B. prior to trial. Russell B. testified he had no personal knowledge of what transpired. Petitioner has not alleged any specific prejudice resulting from counsel's failure to interview Russell B. prior to trial. He has not posited any particular advantage

-30-

the defense would have obtained had counsel interviewed the witness. Habeas relief is denied on this claim.

Petitioner argues that counsel was ineffective in failing to call the detectives who took S.B.'s original statement to testify. Petitioner argues that there were discrepancies between S.B.'s original statement and her testimony at the preliminary examination which could have been explored had those officers testified. The trial court rejected this claim because the officers were not needed in order for defense counsel to impeach S.B. with her original statement to police. The police report was available to defense counsel and S.B. could be impeached with it without the testimony of the original officers assigned to the case. The trial court's resolution of this claim is not an unreasonable application of *Strickland.*

Next, Petitioner claims that his attorney was ineffective in failing to move for a mistrial based upon alleged violations of the trial court's sequestration order. Petitioner argues that Donald Peabody, Roberta Lawes' fiancé, remained in the courtroom for the entire trial. He alleges this gave Peabody an opportunity to discuss the trial testimony with her. The trial court instructed Peabody not to communicate anything he observed to anyone else and not to discuss the witness testimony with anyone else. The trial court found no evidence that Peabody violated this directive, and neither does this Court. Petitioner's allegations against Peabody are based upon speculation unsupported by the record. Similarly, Petitioner argues that Detective Kroll should not have been permitted to remain in the courtroom for the entire proceeding. The trial court denied Petitioner's claim regarding Detective Kroll because, as the officer-in-charge of the case, he was not subject to a sequestration order. *See* Mich. R. Evid.

-31-

615. Thus, counsel was not ineffective for failing to object to Detective Kroll's presence when the officer's presence was endorsed by state law. Moreover, Petitioner has provided no evidence that the officer changed his testimony in response to testimony of other witnesses. Accordingly, Petitioner fails to demonstrate he was prejudiced by defense counsel's failure to object to Detective Kroll's presence throughout the trial.

Petitioner next argues that trial counsel was ineffective in failing to object to contact Petitioner's mother, Roberta Lawes, and her fiancé, Donald Peabody, had with a juror outside the courthouse. In support of his claim, Petitioner attaches an affidavit from defense witness Gaetano Pepe. In the affidavit, Pepe affidavit states that he saw Lawes and her boyfriend talking with a juror. ECF No. 7-7, Pg. ID 791. He also states that he conveyed this information to defense counsel. *Id.* Based upon this affidavit, counsel was aware of the allegation and it is reasonable to conclude that defense counsel determined that the interaction was of no consequence. Petitioner's allegation that counsel was ineffective in failing to act on Gaetano's report is based upon mere speculation and, without more, insufficient to show counsel was ineffective.

Petitioner argues that counsel was ineffective in failing to impeach prosecution witnesses A.W. and Jacob. The trial court rejected this claim, finding that inconsistencies in testimony were for the jurors to resolve. This Court agrees. Defense counsel adequately cross-examined these prosecution witnesses and explored inconsistencies in their testimony. Petitioner has failed to show that defense counsel's handling of either of these witnesses fell below an objective standard of reasonableness or that he was prejudiced by his attorney's representation in this regard.

Petitioner maintains that defense counsel was ineffective in failing to object to the

prosecutor questioning Gaetano Pepe about whether, considering the amount of space taken up by the van's wheelchair lift, there was sufficient space in the van for a sexual assault to occur.  The state court found the prosecutor's single question about this issue was not improper because Pepe's testimony otherwise could have left jurors with the impression that the wheelchair lift took up so much space that it precluded the assaults occurring as they had been described.  Given the state court's evidentiary finding, the Court holds that counsel, therefore, was not ineffective in failing to object to a proper question.

Finally, Petitioner argues that his first defense counsel was ineffective because she left the police building while Petitioner was undertaking a polygraph examination. The trial court rejected this claim, finding that Petitioner did not ask to speak to counsel and, because Petitioner exercised his right to end the examination, Petitioner was not prejudiced by counsel's representation.  The Court finds this to be a reasonable application of *Strickland*.

## V.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the Court concludes that reasonable jurists would

not debate the conclusion that the petition fails to state a claim upon which habeas

corpus relief should be granted.  Therefore, the Court will deny a certificate of

appealability.

**VI.    Conclusion**

The petition for a writ of habeas corpus and a certificate of appealability are

**DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

Dated:  February 11, 2016

                                        s/George Caram Steeh
                                        GEORGE CARAM STEEH
                                        UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 11, 2016, by electronic and/or ordinary mail and also
on John Niemiec #523576, Muskegon Correctional Facility,
2400 S. Sheridan, Muskegon, MI 49442.

s/Barbara Radke
Deputy Clerk

---